Good morning, Your Honors. Robert Gerstein for Appellant Khajarian. Excuse me, are you not able to stand up? I have difficulty. I have currently a back problem that causes pain when I'm standing in one place for a while. Okay, go ahead. Thank you. I was going to comment on that and apologize. Your Honors, this is a case in which there was undisputed error that gave rise to this 15 years to life sentence for second degree murder. And the question is one of prejudice. To begin with, the question is this. The the state court of appeal applied the Chapman standard and concluded that there that this was harmless. This error was harmless beyond a reasonable doubt. It is our contention that that was an unreasonable application of the Chapman standard. And it was unreasonable because there is no reasonable argument on the basis of which one could conclude that it was harmless beyond a reasonable doubt. The principal contention seemed to be that this was a case in which because the jury found Khajarian guilty of arson, and they found him guilty of second degree murder because the court said that they could, that the jurors, if they hadn't had that option, would have found him guilty of first degree murder. Therefore, the judge was doing him a favor by making this error. But the error was certainly in a technical sense in your client's favor, right? Because what he told them wasn't so. In fact, if they found him guilty of arson, they were supposed to find him guilty. It wasn't so as a legal matter. I mean, the juries can do what they want. But as a legal matter, if they found him guilty of arson, they were supposed to find him guilty of first degree murder. Yes, Your Honor, that's the case. But there's no reason to believe that they had concluded at that point or later. Of course, it was a slightly different jury that finally decided the matter. No reason to believe they concluded that at that time that he was guilty of arson. They were considering the options. Yes, Your Honor. Finish, finish. I'm sorry. I didn't mean to. No. I was just going to say they were considering the options. And the options they were given, really, were three. First degree murder, second degree murder, or manslaughter. And they were told that they could decide, yes, guilty on arson, and guilty on second degree murder. That was an inappropriate option. They shouldn't have had that option. Our contention is very simply that we don't know what they would have decided if that option had been taken away from them. They had been told the only way that you can find this defendant guilty of arson is by also finding that he was guilty of first degree murder. They might have pulled back from that and chosen manslaughter and not guilty of arson instead. And there's no basis on this record for concluding that that is an option that they could not have chosen. Therefore, it is not reasonable to conclude. Well, we don't have anything on the record because there was no court report in the jury room. So we don't know. But, I mean, first of all, jurors are presumed to follow the instructions of the court, correct? Yes. And the instructions of the court were if you find the defendant guilty beyond a reasonable doubt of arson, you shall also find him guilty of first degree murder under the felony murder statute or whatever. Yes. And it just simply seems to me that, and you're not challenging the insufficiency of the evidence for the arson conviction, so there's adequate and ample basis in the evidence to find the defendant guilty, the petitioner guilty of arson. And it seems to me that pointing to the lack of evidence in the record doesn't really get you anywhere because whenever the, and I don't think it matters when the jury found the evidence sufficient, beyond a reasonable doubt, to find him guilty of arson, had it not gotten that instruction, and if we accept the presumption, which I think is sort of iron clad, that the jury then would have followed the instructions, find him guilty of arson. Ladies and gentlemen, you find him guilty of first degree murder. And I think that's the state's position, as I understand it, on, quote, the benefit. They gave him, unlike Keeble, he got the benefit of a lesser included offense instruction. And it's very hard for me to imagine that the jury finding him guilty on the basis of sufficient evidence of arson, they would have jumped all the way down to voluntary, to manslaughter. That's the problem I have with your position. Yes, Your Honor. Well, we simply contend this, that in Keeble, in the cases where the defendant was denied an instruction on an additional option, that made a difference. And those were cases in which the result was in accordance with the law. Those were cases in which the jury found the defendant guilty in accordance with the instructions, with lawful instructions. In spite of that, the Supreme Court in Keeble and other courts following it came to the conclusion that there could have been a difference if another alternative had been put into the picture. That is to say that a jury that came to one conclusion that was in accordance with law, in accordance with the evidence, in accordance with the instructions could have come to a different conclusion had there been this option. I gather your argument depends squarely on the proposition that the finding of guilt on arson was not inevitable. Absolutely. It may have been supported by substantial evidence, but it wasn't – a jury could have found otherwise based on the evidence as well. Absolutely. A jury could have found him not guilty of arson on the basis of the evidence and the instructions given, because could have concluded that he did not have the state of mind required for arson. Which is what? Which is intentionally a setting of fire. So what's the theory under which he would have been not guilty, applying that standard? Well, Your Honor, what we know about his state of mind, of course, he is described by Dr. Markham as being schizotypal, having a potential for delusions, having tunnel vision. What Dr. Markham said is that the defendant said that voices told him to pour gasoline on the floor. That's what he did. And he said that a fire resulted when a heater cycled on and ignited the gasoline. Did he intend to have the fire? Well, that's a question. And it's a question which the jury could have decided in the negative on the basis of the evidence. This is a situation in which – As an insanity defense or diminished capacity? Well, it's simply that he did not form that intent, Your Honor. Simply that he did not form that intent. The prosecution did not even claim that he intended to kill his grandmother, although he poured the gasoline in her room. Clearly, his thinking was disorganized. He was under delusions. It is reasonable to come to the conclusion, the jury could have come to the conclusion in this situation, that he did not form that intent. Though there was no insanity defense made, but there was the contention made on the basis of Dr. Markham's testimony that he could well not have formed the intent to set the fire, that he could well not have consciously disregarded the risk that he was creating to his grandmother. But again, don't we presume that the jury, in reaching the arson verdict, found beyond a reasonable doubt, despite all the evidence, other evidence, he was guilty of intentionally setting that fire? Well, yes, Your Honor. But as is the case, when the jury is denied a, say, third option, giving them an additional option that shouldn't be there could change the picture. It is the case that they found arson beyond a reasonable doubt. It is also the case that they could have found otherwise and that they could have been influenced by the stark fact that if they found arson. And it's your contention under Keeble and so forth that they could have found something different. Absolutely, Your Honor. It would not have been against them. It entitles them to habeas relief. Yes. It would not have been against the law for them to decide not guilty of arson and guilty of manslaughter. That was a lawful verdict. To go back to what Judge Carr has been saying, the second-degree murder instruction here was not incorrect. You're not attacking that. Is that right? It was incorrect. That is to say the instruction that they could find second-degree murder and arson. I understand. But the instruction, the basic instruction of second-degree murder. I mean, you seem to be arguing that somehow what the judge's additional instruction negated the requisite malice that was in the basic second-degree murder instructions. But why and how? Because, Your Honor, having been told that they could find second-degree murder and arson, looking at all the instructions together, the instruction on murder stating that murder is killing with either express or implied malice or in the course of an arson. And then being told, yes, second-degree murder may be, second-degree murder may be based on either express or implied malice. Putting them together, what that says is that second-degree murder, like first-degree murder, may be based upon express, implied malice, or the fact that it took place in the course of an arson. And that would negate the malice requirement. As the instructions appeared, that was an option they were given. But that suggests that there's some room between arson and implied malice, that there's some space there. What's the space? Oh, the space, Your Honor, is that all you have to show for arson is that there was an intention to set a fire. Now, the question is, was he conscious of the risk to his grandmother? And again, on the basis of the record made, on the basis of Dr. Markham's testimony, he may well not have been conscious of that risk.     I don't know. I don't know. And I guess what I would say is that, as I said, everybody said he loved his grandmother. He had no intention of hurting her. It makes no sense. But a great many things that this young man did made no sense. Okay. Your time is up. We'll give you a minute to wrap it up. Thank you very much. Thank you. Good morning, Your Honors. It pleases the Court, Deputy Attorney General V. Edwin, for the warning. Here, the trial court erred under California law when it instructed the jury that Petitioner could be found to be convicted of both arson and secondary murder. However, Petitioner was not prejudiced by the erroneous instruction but benefited from it. Let me ask you something. The jury's question was the following. Can we find Petitioner guilty of secondary murder with a guilty on arson? And the answer was yes. Right. So in other words, the judge didn't actually spell anything out. He just said yes. Correct. All right. And the jury's question couldn't have meant if we find guilty on arson, is that enough to find secondary murder? I think reading the instructions as a whole, it doesn't give that. I mean, explicitly in the second-degree murder instructions where it said that malice is required. I understand that. But your opposing counsel has posited that the jury might try to, might, or maybe my version is, might they have been asking, since you can get first-degree murder simply by finding an arson, can you get second-degree murder simply by finding an arson? That's not how I read the question. My understanding of the question is, well, I just think based on the instructions, I think they asked does the arson compel a first-degree murder conviction under the felony murder statute. Right. That's what they're asking. Yeah. They're asking if it compels it. But I don't think they're asking if it also compels a second-degree murder. Second-degree murder. Yeah. I just think they're asking does an arson finding compel a second-degree murder verdict. Well, they didn't say anything about first-degree murder. They only talked about second-degree murder. I mean first-degree murder. Right. They didn't mention first-degree murder. So what is a perfectly sensible understanding of what they were asking was does it also compel a second-degree murder, i.e., is it enough for a second-degree murder if we otherwise want to do a second-degree murder? Because I think in the instructions in first-degree murder, they're explicitly instructed. In this case, they're only going to say this. They were obviously confused about something, right? Because the instructions were also clear, or you would say they were clear, that you could not, in fact, find second-degree murder if you found an arson. Correct. So they were confused about something, and they were asking some question. Correct. And the question is, either version of which is counter to the original instructions. So, therefore, we're dealing with what inconsistent with the original instructions were they asking? You know, based on my reading of my interpretation of the record, they're asking if, because of the first-degree murder instruction, it wasn't they were only instructed on felony murder. And based on that instruction, they were instructed that if a finding of arson is made, it compelled the first-degree murder instruction. They didn't say a word about first-degree murder. They didn't say a word about first-degree murder. So that's the least – the less likely question, is it not? I mean, it might have been nice if the judge had actually said something other than yes. But since he said yes, we're stuck with interpreting the question. Correct. And I think the district court found that this question didn't indicate they were confused on the arson charges. And so – Yeah, but maybe they were hung or heading towards being hung on the arson charge. Maybe some – they were split on that. And somebody back in the jury room said, hey, look, you know, I don't want to commit this kid a murder. He set a fire. Let's see if we can do something else. And that would be, I guess, presuming they wouldn't follow their instructions. How long did the jury deliberate for? The jury that convicted him deliberated for two and a half days. There was a time in there where one of the jurors got excused. And after he was excused – I thought it said two weeks. Is that wrong? It wasn't two weeks. It was – I think it's laid out in the district court's opinion. But as constituted, the jury that found him guilty deliberated for two and a half days. As constituted, meaning that there was a juror – The jury that actually – The jury in general deliberated for how long? The jury – two weeks. And at that time, they had dismissed a juror for cause because he wasn't getting paid. It was going longer than it should have, and he wasn't getting paid anymore. They dismissed that juror. Was this question after that jury was – juror was dismissed or before? No, it came the morning of the second day of deliberations. So it was before he was dismissed. It was before he was dismissed. Correct. And then the jury, as constituted – And then it went on for another week and a half after – or a week or so after this question. And then they excused the juror. And then they seated an alternate juror. And then two and a half days later, they came to a decision. If I understand your opponent's argument, Petitioner's argument, it is if we conclude that the jury could have found him guilty of arson for whatever reason, not decided to proceed on a first-degree murder, or the jury might – the other way around. If we conclude that the jury might not have found him guilty of arson but for giving this alternative for a compromise, is that enough? I think that belies – To grant relief, and if so, why not? I think that's his argument. If that's not, he'll correct it. I think that belies the record, too. They were given the choice of finding guilty of manslaughter and not guilty of arson. They just rejected that. And I think also – After they got the charge that was erroneous as a matter of California law. Correct. Afterwards. After they were presented with the opportunity to compromise. Yes. But also, I would also state that the evidence of his guilt on arson was overwhelming. It wasn't that there were substantial evidence. It was overwhelming evidence. And that evidence included even the testimony of Dr. Markman, which he relies on, concluded that he was sane at the time of the incident with the capacity to appreciate his acts. And he knew the difference between right and wrong. Dr. Markman did detail his conditions, but he ultimately concluded he was sane and he knew what he was doing. Was there evidence that he was essentially following voices or something? He told Dr. Markman that. Voices told him to pour out the gasoline. Did Dr. Markman dispute that? Excuse me? Did Dr. Markman accept that or dispute that? No, I think he just – from what I read of the testimony is that he wasn't so insane that he didn't know what he was doing. That he had the capacity to realize that. Well, then he was pouring the gasoline on the floor, but what if he really thought he was pouring it on the floor because some voices told him to do it and just didn't think about what was going to happen? I think that goes to intent. But if you look at the evidence, the gasoline pour was – there was a debate whether it was lit with an open flame or the space heater. The space heater is 10 inches away from his grandmother's bed. And the evidence is that the gasoline was not just poured on the carpet. It was poured on his grandmother's bed. And that just – Well, it's also the observation of the people, the brother and police officer, that the only flame they saw was over by the door some distance from the grandmother's bed. Then I think that would indicate that it was lit by an open flame. Because if the space heater is only 10 inches away from the bed and there's a fire away from that bed or away by the door, then I think it indicates that it was an open flame. Did the jury hear testimony about the petitioner having acted because he heard voices? Was that – I just – I don't know. Was that before the jury? That was before the jury. It was testimony. Because in this case, too, he also admitted to Dr. Markman that he had bought the gasoline, placed it in a plastic container, and poured it on the floor. And then he told him that he heard voices talking. And there was a partially burned or partially melted nozzle that fit the gasoline can that was found, right? Yeah, it was found in his trunk as he was at the Mexican border. And also, I think, too, his fleeing from the scene shows a consciousness of guilt. I mean, granted, there was a fire. I mean, he was just fleeing all the time. Yeah, but he was seen with the gas container before the fire. After the fire was lit and his mother woke up, he was seen fleeing the scene. Well, you saw him driving away, but this guy had just gotten his car in trouble for days, routinely. But this was directly after the fire and the fire alarm was going off. I mean, there is, of course, it could be coincidence that he's leaving the house exactly at the time of the fire. But I would submit that leaving at the time he did, it reflects a consciousness of guilt of knowing what he did, knowing that the fire would start, knowing that his grandmother would die, and he just left. Well, the grandmother dying doesn't have anything to do with the arson, right? I mean, it has a lot to do with it, but it's not essential to the guilt for arson. You know, it doesn't have much to do with it on the first-degree murder. On the second-degree murder, it kind of would be because if it was proven that she was, I guess, dead before the arson started, then it wouldn't be first-degree felony murder. Because if she had died as a result, say she had died in her sleep, and then he had lit her on fire, then at that point, there probably wouldn't be a first-degree murder. But there was no evidence. There's no evidence of that. But at that point, there probably would be no felony first-degree murder because it would have to cause the death of his grandmother. Okay. Do you have anything else? No, that's all. Thank you very much for your argument. I'll give you one minute. Okay. Yes, Your Honor. Just a few points with regard to the instructions. On page 65 of the excerpts of record, there is the instruction with regard to murder. And it --"murder without statement of degree." Murder is defined as killing with malice aforethought or occurring during the commission of an or attempted commission of arson. So they have an instruction that says generally murder is either malice or arson. And then you look at the instructions on second degree. Murder of the second degree is also the unlawful killing of a human being with malice aforethought. Also. That is to say the jury is being told it can be with malice aforethought. And then on page 70, we have another instruction that says that it can be basically the product of implied malice. Murder of the second degree is also the unlawful killing with implied malice. Now, you put those together and the jury could, on the basis of those instructions being told that they can find second degree murder along with arson, could conclude that the arson would replace the malice for second degree murder. As to Dr. Markham's testimony, he did not say that the defendant knew what he was doing. He did say he was sane and therefore was capable of knowing what he was doing. But he did not say he knew what he was doing in this context. His testimony at pages 2, 2763 to 64 of the reporter's transcript was that he poured the gasoline because he was hearing voices that told him to do so and he was following those voices. As to the evidence with regard to the fire, there was no clear evidence that any gasoline was poured on the bed. There was a suggestion of that and there was evidence that no, really there was no clear evidence of that. There was no evidence of an open fire causing the fire, that is to say an open flame being used. There was only the evidence of the heater. Basically, there is nothing. Oh, and as to Flight, in Respondent's brief, they state that he was fleeing to Mexico when arrested. In fact, he was coming across the border from Mexico to the United States when he was arrested. Yes, Your Honor. Where is the instruction on first degree murder? The instruction on first degree, let's see, here we are. It's on page 67 of the excerpts of record, Your Honor. I see. So it's after the other one about the arson. Yes. Yes. There is an instruction about arson that precedes the instructions on both first and second degree. So we have the statement that murder can be found on the basis of arson instead of malice. And then we have an instruction on first degree murder. And then we have, that clearly says that that is a substitution that can be made. And then we have a second degree murder instruction. Yes, Your Honor. Any felony murder instruction of the usual kind that says if you find that he committed a felony, and this was in the course of the felony, he would be guilty of first degree murder. Was there such an instruction? Yes. There was a first degree felony murder instruction on page 68, Your Honor. I see. But that certainly didn't negate the general instruction that any murder can be based on arson rather than malice. And there's nothing in the second degree instructions that says that that's not the case for second degree. Okay. Thank you very much for your arguments. Thank you, Your Honor. The case of Kajarian v. Evans is submitted.
judges: Carr, Berzon, Watford